By way of roadmap, I'm going to start with issue 4, the government's breach of the plea agreement. And for clarity's sake, there's two underlying cases here that were combined into one sentencing proceeding. Well, correct me if I'm wrong, but we don't reach issues 2, 3, and 4 if you should prevail on 1. Isn't that correct? Your Honor, we believe that the most appropriate remedy here is a resentencing based on issue 4. Okay. So you're not pressing issue 1? Whatever this court wants to do, Your Honor, I would certainly respond to, of course. But it seems to us that the most appropriate remedy is on issue 4, and a resentencing based on issue 4. So you don't want to go to trial? You don't want to withdraw the plea? You'd get much more relief on 1. You do understand that? Yes, Your Honor. But you're waiving your argument on 1? I am not waiving. What I'm suggesting is that the most appropriate relief, we believe, is on issue 4. And if Your Honors do not agree with that . . . Well, if it's most appropriate, then it would seem to me that you're suggesting that you're not arguing that you get a new trial with respect to one of these convictions, and that both sentences be vacated, which is what you would get with respect to issue 1. If you're still pursuing that, if you still want that, then you better argue issue 1 first. Yes, Your Honor. I believe that issue 1 would only vacate the second sentence. It would only vacate the second plea, Your Honor. There hadn't been a sentence. It was a global sentencing, wasn't it? Yes. It was a global sentencing. So it would vacate both sentences and the second conviction. So if you don't want that relief, fine. If you do want it, you better start with issue 1. That's completely fine, Your Honor. The Court's interference here was a clear violation of pro-rehabilitation for an error of this kind. The Court forever tainted the proceedings when it pursued suggesting that the defendant here should, in fact, move forward with a plea in the second case. And the government argues in this case that the error was invited, and that's just not a read of the record, and I would trust Your Honor's read of the record at 166 through 168 in the joint appendix. The dialogue between the Court and counsel do not bear out that the error was invited, Your Honors. The government suggests this is up here on plain error? Yes, Your Honor. You may take issue with the invited error, but we hear the government on that point. You concede it's here on plain error? Yes, Your Honor. Maybe you want to go through the plain error standard, then? Certainly. How you meet it? Certainly. There was an error. The interference by the judge, that error was plain. We would certainly suggest that that error was open and obvious, and that relief is warranted. And also, there were substantial rights affected here, because it did ultimately change the outcome of the case under the facts as presented. Do you want to, as to the substantial rights, is the test for that whether or not you wanted to go to trial? I believe that the standard . . . Is that how we measure substantial rights in the absence of the district court's alleged interference here, you would have gone to trial? Would the result have been different, Your Honor? No, no, no, no. I'm asking you a more specific question. I'm saying, is the measure of the plain error test, that in the absence of what you allege to be the district court's error, you would have sought to go to trial? Yes, Your Honor. All right. Now, in order for me to discern whether your substantial rights are affected, is it your contention at this moment that you wish to withdraw the plea agreement? Yes, Your Honor. You want to withdraw the plea agreement and proceed to trial? Your Honor, I would suggest that absolutely. Okay, so you're saying you want to get out of the plea agreement and you want to go to trial? That's correct, Your Honor. All right. What indication was there before the district judge that this was what you wished to do? The defendant had declined the plea offer, Your Honor. First he got accepted, then he declined it. He was back and forth. He was back and forth, Your Honor. But at the moment that the interference was made, he had affirmatively stated that he was not going to accept the plea offer. This is a very difficult thing, a very difficult defendant for a district court to deal with. There's just no question about that because it blows hot and cold. Everything up here is on . . . all these different claims seem to me to be up here on plain error review. Yes, Your Honor. Almost without exception. The whole idea, the whole concern with plain error review is to avoid sandbagging the district court, and yet we have four or five claims, all of which are up here on plain error with a defendant that blows hot and cold. When I asked you, because normally the question I would think under plain error, whether the outcome would have been different, one of the ways you would say the outcome would have been different and thus the substantial rights were affected, is that you would have gone to trial. That may not be the only way, but it certainly is the most obvious way to me. I can't see from this transcript that the defendant was doing a whole lot other than wandering back  Yes, Your Honor. However, at that moment, he was not going to take the plea offer, and it was right after these comments by the district judge that made him take the plea offer. Except if you take his desires as a whole, it's not clear that he wasn't happy with accepting the plea. While there is certainly ambiguity leading up to the time . . . The thing you worry about with respect to a plea is a district court's involvement is coerce, some sort of behavior and coerce someone into taking a plea, but didn't the district court in the Rule 11 hearing go out of its way to make sure that the plea was voluntarily entered, and didn't the district court say several times, I'm not getting into this plea negotiations, and never threw out any numbers or discussed any terms? I guess the question I have is, if this were up here on something other than plain error review, it would be a different case for me. But it's up here on plain error along with everything else which is up here on plain error. The district court didn't get any help. It's supposed to be an adversary process where people object and put in timely objections. To me, the plain error standard of review in this case and with this claim means something. It's got to mean something. Yes, Your Honor. Are you arguing that the plea wasn't truly knowingly and voluntarily entered? What I'm arguing is that the government breached the plea. Do you mean with respect to Issue 1, Your Honor? Issue 1. With Issue 1, the argument is simply that the court coerced the plea. So you're saying it wasn't truly voluntarily? Yes, Your Honor. The best thing you have going for you is that this is a violation of the rule and the courts interpreting this violation of the rule have almost unanimously and, in fact, I think unanimously on even a thinner record than this for the defendant said that there is a serious effect on the fairness and the integrity of the judicial proceedings. Yes, Your Honor. And there were comments made after the indication of a possibility of a global resolution that, in fact, that it did stand to benefit the defendant. The district court made those comments, Your Honor. But in this case, whether or not you find plain error with respect to the first issue, there is plain error with respect to the government's breach of the plea agreement. And that was done not just in the issue of a base offense level moving from a 6 to a 7, but in arguing for sentence enhancements that it specifically agreed not to argue for. Quoting from the plea agreement, Your Honor, is at paragraph 8, the second plea agreement, this office and the defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States sentencing guidelines will be raised or are in dispute. However, in the government's memo to the court, the sentencing memo, it did, in fact, go outside of that and argue for relevant conduct that, in fact, it had agreed not to argue for as relevant conduct is a sentencing guidelines factor. Is relevant conduct an enhancement? Relevant conduct in this case was, in fact, both a sentencing guidelines factor and an enhancement. I'm sorry, Your Honor, the enhancement was the 3147. So in this case, it was simply a guidelines factor. Yes, Your Honor. In the agreement, the government was barred from seeking such a departure. Isn't that correct? That's correct, Your Honor. But it didn't constrain the judge. That's correct, Your Honor. But what it did was it constrained the government from seeking that, which ultimately the government did seek that, Your Honor. Furthermore, the sentence in and of itself is legal. It is illegal. If the sentence is illegal, then he needs a legal sentence. If the sentence is legal, then the rule of lenity has been violated by sentencing under a subsequent offender statute, the 3147 enhancement. Either way, there is prejudice to my client, and either way, I would argue that all prongs of the Alano test have been met here for plain error. The plea agreement here is pretty generous, convoluted. Yes, Your Honor. You've got things colliding into each other, provisions colliding into each other, seemingly saying different things. Who's responsible for this kind of document? I mean, it doesn't speak straightforwardly. I see that my time is up. May I answer, Your Honor? I'm interested. The government drafted this? Yes, Your Honor. It was a negotiated process. It was. However, ambiguities have been deemed to be the responsibility of the government. I understand. But why would you want to agree to something that is this porous? I mean, is it really in the interest of your client to have something that is this convoluted? I would agree with you, Your Honor. I cannot speak to what trial counsel thought. I would agree with you, Your Honor. But I don't know why either side would want to come up with something like this. It's a mishmash. I agree, Your Honor. Okay. Thank you. Thank you. Thank you. Good morning, Judge Wilkinson. May it please the Court. My name is Sujit Raman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. I will certainly respond to some of the questions, Your Honor, that were posed to Mr. Warnken. I would like to begin, though, with an overarching principle of law, which is, of course, that we are up here on Plain Error Review on every single one of the issues that Mr. Sonia has raised in this case. And as the Court is very well aware, on Plain Error Review, the purpose of the rule that a defendant must lodge a timely and contemporaneous objection in the district court is for the very reason, Judge Wilkinson, that you pointed out earlier, so that the district court, so that the parties are not sandbagged up on appeal, so that the record is developed, so that if there is an objection, it is timely raised so that the district court can address it right away and correct it if there is indeed an issue. Well, I don't think I've seen a case where somebody has raised five claims, all of them up on Plain Error, or at least clearly four of the five are, and I think the fifth may be, too. And, you know, it speaks to a complete gutting of the whole idea that proceedings before trial courts are supposed to have an adversarial quality, and I mean that in the best sense. And it doesn't serve a defendant's interest to excuse one after another after another after another failure to object. And quite apart from the fact that this is all up on Plain Error, the defendant's blowing hot and cold here. The district judge is given no help, first of all, by the nature of the defendant, and second of all, by the fact that there's counsel lets him down with never lodging an objection. It's an impossible position to put a trial court in where you have some, it's like one of these Faretta claims. I want counsel, I don't. I want counsel, I don't. So you have a hot and cold defendant and a lawyer who's given the district judge no help, none. And it can't be contended if one is talking about something that impugns the administration of justice. Part of what impugns the administration of justice was the way that this whole proceeding went, in part through no fault of the district courts. But let me respond to that, Your Honor. As the court has observed... I think your best response is probably, Amen. Well, that's right, Your Honor. But I don't want to give the impression, though, that the district, that the trial counsel was somehow ineffective. I don't think he was. But let me get to that point in a minute. Judge Wilkinson, as you observe, the standard here is, was there a miscarriage of justice? And absolutely not. When you look at the colloquy about the plea agreement, and I'm happy to address that in a minute, whether or not the district court involved itself in plea negotiations, as we suggest in our briefing, it's a little bit academic about whether or not there was an error. Certainly I think the district court may have strayed across the line. We can see that in our brief. I think the issue is more difficult than the defendant presents in his brief because it was, after all, a detention hearing. And one of the things a district court has to do at a detention hearing is comment on the strength of the evidence. Is there enough evidence under 3142 to keep you detained, Mr. Defendant? So the simple fact that there was a comment about the strength of the government's case is not error in this particular context. Secondly, the idea that, as Judge Wilkinson, you pointed out, this is a defendant who was hot and cold the week before he wanted to plead. This is somebody who, as we've pointed out in our briefing, manipulated the system throughout by, on the one hand, apparently hiding assets from the government, breaching the plea agreement on his part with impunity at the sentencing hearing. So time and time again, this is a system, this is a defendant who was not helping out the district court in any way. I've told you what at least my overall take on the case is, but that doesn't absolve the government in this case. And I have one problem is that this plea agreement, I read it and I reread it and I reread it. I'm still not sure I can make heads or tails of it, and I don't understand why you would want something like this. You know it's going to cause you difficulty because it is just really convoluted. Why would the government sign on to something like that? I mean you've got these two paragraphs right next to each other which appear to contradict one another unless you parse it. I mean these things are supposed to be easy for the government to understand. It's not a construction contract where there's deliberate obfuscation. But these things are supposed to be easy for a defendant to understand and for the government to understand. And this is the exact opposite of what a plea agreement is supposed to represent, which is some modicum of clarity. How did we get here with this kind of an agreement? I take your point, Your Honor. I presume the court is referring to paragraphs 8 and 9 of the plea agreement. I will tell the court this is our standard plea, which we've had in effect for probably 15 years. So I will certainly take this back to my office and make it very clear that these two provisions need restructuring. I will tell the court that, and I think we've touched on it in our briefing. I actually don't think they're contradictory. Paragraph 8 says that with respect to the calculation of the advisory guidelines, no other offense characteristics will be raised. So at sentencing, and now this is where we get to paragraphs 9 and 10, any other relevant information may be brought to the district court's attention. So that is, at sentencing, the prosecutor can get up and say, Your Honor, this is what the guidelines are. We're not arguing about that. But as far as your analysis under 3553A, this is relevant information under paragraph 10 that is relevant to the court's ultimate determination. Your whole position depends on relevant conduct not being an enhancement? Well, I don't think so. No, no, I don't think it does. Our whole position is that the guidelines were properly calculated, and then the question is, separately, putting aside the guidelines. And I think the district court was very clear here. Putting aside the guidelines. You know, the plain error may rescue you on some of this. I don't know. You know, I don't know. But, you know, I still, to get to where you are now saying, what you're now saying to me, I had to parse it. I understand, Your Honor. You know, over and over again. And I do think if this is your standard plea agreement, that it ought to be drafted in a more straightforward way. I can promise you this is going to cause you problems. I understand that, Your Honor. The court has consistently held the government to the benefit of its bargain in plea agreements. And the benefit of the bargain here was that its base offense level was six. And now the government wants a get-out-of-jail-free card and going up to seven. And that can't be consistent with prior Fourth Circuit law about holding the government to its bargain. That's right, Your Honor. Let me respond to that. We are up on plain error. And, of course, the third prong under plain error. Well, the question is, did it affect the defendant's substantial rights? And I think this is a case where, you know, you don't have it in every case. But this is certainly a case where the district judge made it crystal clear that the sentence it opposed was absolutely divorced from the guidelines. It considered the guidelines, but at the very end, the district court said very, very clearly, I think this is a sentence that should go up towards the statutory maximum, which is in this case 20 years, and I know there might be a dispute about that. Ultimately, setting aside the guidelines, you know, in my experience, it's actually quite rare where a district judge will say, forget the guidelines. I have made an individualized assessment of this particular defendant. And I've excerpted in our brief the lengthy 3553 analysis that Judge Mazzetti undertook in this case. I think this defendant deserves 188 months on count one. So let's set aside the guidelines. You know, the one level is immaterial. Let's set aside the government's arguments. But if we set aside the government's arguments, then we don't have the government's arguments, and we do have them in this record. I'm sorry, Your Honor. I didn't follow. If we just had the plea agreement and no other late-breaking developments by the government raising the offense level, we'd have it in case, but we don't have that. Well, I don't think so. Well, perhaps I'm still not seeing the question. I guess my point is at the very end of the day, the guidelines were calculated the way they were calculated. In fact, I should point out, the district court gave the defendant a considerable break in calculating the losses in this case, where obviously we have not appealed the guideline decision below, but our evidence that we thought was that the losses were well in excess of $400,000, actual losses under the guidelines, which would have led to a 14-level increase under the guidelines. The district court didn't credit that. He made a very explicit finding that I'm only going to find losses here for 12 levels, which is around $250,000, even though it is crystal clear that there was much more loss caused by the defendant in this case. Let me just ask you this. What if we had a different case, and the defendant had agreed to a level 6 and a sentence appropriate to that and had signed a plea agreement that said that, and the government had signed that plea agreement, a clearer plea agreement, not this plea agreement, a clearer one, and then the defendant had come in and said at sentencing, oh, you know, I really made a mistake when I was calculating this, and it should be a level 5. Don't you think the government would say you signed the agreement, we're holding you to the agreement? You've waived, and indeed the government would say you've waived any right to appeal because they'd have that in the agreement too. Oh, no, that's absolutely right, Your Honor. So the government wants to get the benefit of the bargain. No, no, that's right. But maybe perhaps I should point out under paragraph 15B of the plea agreement, page 211 of the joint appendix, remember now it's an agreement asked to the guidelines of offense level for this in combination with case number one, the first criminal case. So as the Court has observed earlier, this was a consolidated sentencing, and the understanding from the very beginning was this would be a combined case. And so when you do the grouping rules, you end up with a level, I think it was 34, wherever Mr. Sonia ended up. I don't think there was any confusion or, you know, there was never any question that this case would be a consolidated sentencing regarding both matters. And so I don't think there was any ambiguity. I guess maybe that's my point. I don't think there was any ambiguity about. Well, there is an ambiguity because, you know, the government, isn't it misleading for the government to stipulate to an offense level that you knew would be set aside after grouping? I don't know, Your Honor, because, again, the calculations were for this particular case, the $30,000 that Mr. Sonia caused in losses with the three co-conspirators on that one night, September 15, 2012. For this particular case, case number 13-121, there was never any doubt that this case, 13-121, would be combined with case 12-279 where we were contending that the losses were in excess of $400,000. There was never any dispute about that. The defendant knew at the very beginning that he would be on the hook for all of that. I mean, in the very first case when he pled, he knew that we would argue that the losses were in excess of $400,000, and he reserved the right, he talked about ambiguities, that the losses were less than $10,000. So you have a case where fundamentally the government and the defendant have a very different view of what the scope of the harm is. And so he knew that at the ultimate day of reckoning, at the ultimate day of sentencing, we would be arguing that the losses were astronomical, which is, in fact, what we did. The district court, while crediting the fact that the losses were huge, made a guidelines determination that it was only $250,000, and then very clearly in his 3553A analysis said, set aside the guidelines. I've considered them. I've thought about them. I think this defendant deserves it. I'm sorry, Your Honor. Let's go back to issue one. I was a district judge for nine years, and I can tell you from experience that if I were to just hint to a defendant or a defendant's attorney that it's not as strong as this judge did, but if I just hinted, I guarantee you they'd take the deal. And that's why we have that rule that we shouldn't be commenting. They often accuse me of looking over my glasses in a certain way, and they know. But you do agree he went beyond what he's supposed to do. We do not dispute the fact that the judge likely strayed across the line, Your Honor. And the remedy, which I used to use, is, all right, it's up for trial. Well, with respect, Your Honor, not quite. Now, Davila was decided last year by the Supreme Court, a very important case that talks about Rule 11 C1 errors and makes it very clear that when you get to the third prong of plain error review, was the defendant's rights substantially, were substantial rights affected? You have to essentially look at the entire record. So it's not an automatic vacator rule, where if the judge strays across the line, you have to vacate the guilty plaintiff. Did that case deal with the Rule 11 violation? Yes. It did? Yes. It was this exact issue, the Rule 11 C1 issue with the court. Interference with the plea bargain. Exactly right, Your Honor. And that's the point. No, it isn't. I mean, you know, again, I'm not putting a halo around the government's head in this case, or the district courts, because I think what the district court did was wrong. I think it went too far. And, you know, but did it affect substantial rights, or is there some miscarriage of justice here? Right. It's the third and fourth prongs of the line. Do you suggest the facts here are the same as in the Supreme Court case? They are different, Your Honor, and here's why. Number one, the defendant in this case never moved to withdraw his guilty plea, whereas in Davila he did. Do you think that it's a stronger case? This case is stronger for us. And, in fact, if you look at Davila on remand, and I should probably file a 28-J letter on this, the Eleventh Circuit looked at Davila on remand and did not allow that defendant to withdraw from his guilty plea, even though you had a magistrate judge in an ex parte hearing. So the government wasn't even there. Magistrate judge looking the defendant in the eye and saying, you need to plead. I think he said something like, come to the cross, brother, you've got to plead. And that was held to be not reversible error on remand. So that's the very same case. Well, it doesn't sound to me like it's the same case. Tell me a little bit more about the facts about Davila. So the magistrate judge essentially calls Mr. Davila in and advises him to plead guilty and says, you need to cooperate. You need to give it all up. It's a tax case, I think. You need to cooperate with the government. He had a prior conviction. Some time passes between that hearing, that ex parte hearing, where it's just the defense lawyer and the defendant in front of the magistrate. He goes to the guilty plea hearing before a different judge, and that's one fact that is different from this case, where it's the same judge here who does the detention hearing and the Rule 11. It has an exemplary Rule 11 colloquy in Davila, just like in this case, where a month passes, which is a considerable amount of time, between the alleged error and the actual Rule 11 colloquy where the defendant says under oath, I have not been influenced. But he hasn't been urged by the court that is sentencing him to take the sentence. That is certainly one distinguishing factor. It's a fundamental difference. Well, it's one factor. And there are cases, Your Honor, five months pass between the Rule 11 colloquy and sentencing. So six months have now passed between the error and the actual date of sentencing. Not once did the defendant in this case move to withdraw, and defendants routinely move to withdraw for all sorts of reasons. In Davila, the defendant moved to withdraw. This defendant never moved to withdraw. At sentencing, he has an elocution. He says, I did it. What I did was wrong. There was no indication, Judge Wilkinson. I want to get back to the point that you asked my opponent. It is the defendant's burden on plain error review to show that he would not have accepted this plea and would have gone to trial. It's his burden, and it's a substantial burden. There is no record in this – there is no evidence in this record to suggest that Mr. Sonia would have gone to trial. He signed the plea agreement. Well, the best evidence is that he wasn't going to go to trial. He did not want to plea until the district judge said what he said. If I could respond. So there is that evidence. There is that evidence, Your Honor, but respectfully, and this is where you have to engage in a full record assessment. And this is Davila. This is the Supreme Court in Davila instructing the courts of appeals. You have to engage in a full record assessment. And I submit to the court that entire sort of dance that Mr. Sonia was engaging in about whether he was going to plead or not going to plead was all manipulation. It was all tactical. He basically said, I want to plea, and you'll see at the very beginning, defense counsel contacted the government and said, let's consolidate these cases, i.e., he wants to plead. He then files – he gets indicted, and then he files a motion saying, I don't want to plead. At the last minute, puts forward a diminished capacity defense after plea negotiations had fallen apart, trying to delay the trial. I'm not his lawyer, and I don't hold any brief for this guy, but the rule is the rule. Certainly, Your Honor. And I have had the experience on the other side of the bench from my friend Judge Floyd where if the judge says something to you, you take the hint, and it has way much more force and sway than perhaps we sometimes realize. Certainly, Your Honor. I do not for a minute dispute that. But again, we have to come back to the standard of review. And again, it is Mr. Sonia's burden to show that the result would have been different, that his substantial rights were affected. And it's not just a, you know, sort of fee-fifty. It's his burden to affirmatively show that he would have rejected the plea and he would have gone to trial. So there's a Rule 11 hearing. Yes. The judge probes at the Rule 11 hearing as to the voluntariness of the plea. Multiple times. All right. He makes the comment. And he said, you know, the disclaimer doesn't get there for me, but he did say I'm not interfering in the plea bargaining process. Correct. But, you know, I've indicated I think he went too far. But how long after the plea was taken did he wait to lodge this objection? He certainly didn't do it at the time. He certainly didn't do it at the Rule 11 hearing. When did this arise? On appeal. In his opening brief. On appeal. In his opening brief. He didn't object at the time the comments were made. He didn't object at the Rule 11 hearing. Didn't object at sentencing. Correct. The first time the objection arises is on appeal. Right. You know, again, there's some obligation on both sides to make these proceedings come out in the best fashion. That's my problem. That's my problem with the other side's case. But I don't . . . I do think this district judge stepped over the line. I don't see how it can be viewed otherwise. If I may, I know my time is up, Your Honor. If I could just make one last point on that. There is a very clear line of cases holding that where a defendant invites the error, you can admit the error, but it's waived. Just like in every other context. You have to find this is invited error. That's right. That's right. Did the Court of Appeals in Davila say that this was an automatic reversal if there was a violation of 11H? You mean on remand, Your Honor? No. Or in the original? Originally. You know, I can't remember the law in the 11th Circuit that did it. That was the case, and that's why the Supreme Court reversed. Right. Which was also the law. There would not necessarily be a holding here that there was an automatic. See, that is a little different. Oh, certainly. So if you remand for a determination. That's right. Well, and the law in this Court, and I know, Judge Moss, you're very familiar with the Bradley case. I am familiar with it. In that opinion, this Court held very clearly that it's not automatic. In fact, the Supreme Court ratified that, essentially, that decision in Davila. Davila. That's right. That's the issue that's at Davila. So Davila doesn't really help you except to get by the fact that this is not automatic. No, that's right, but on remand. And there's another case in the 11th Circuit, Castro, which, again, I apologize. I should file a letter with the Court, which really goes through this inquiry. And the citation there is 736 F. 3rd 1308. It's a per curiam opinion by the 11th Circuit, which the Davila Court on remand relied heavily upon. And it's this inquiry. It's applying plain error review to an instance where, again, the Court clearly crossed the line. In Davila, there's no dispute. The government conceded in the Court of Appeals. It conceded in the Supreme Court that the line was crossed, and it was far over the line that we're talking about here. Even then, on plain error review, the defendant's rights were not substantially affected. His substantial rights were not affected because he could not demonstrate that he would have gone to trial. And that's exactly, respectfully, I would submit, what we have in this case, where the evidence was overwhelming. He gave a Mirandai statement off the scene saying, it was me. Three other co-conspirators said it was him. He has never moved to withdraw from his guilty plea. Never once contested it at sentencing, said, I did it. Never suggested he was coerced. In fact, in Bradley, as the Court is very well aware, the defendants were telling the district judge, why do you keep re-judging us? Stop telling us to plead guilty. We didn't, you know, let this play out. That's not what you have here, where after that one incident at the detention hearing, it's very clear that the defendant never contested the fact of his guilt. I certainly don't want to go on and on, Your Honors. Thank you very much. Thank you. Mr. Warnken. Isn't it true that in the agreement, the government expressly reserved the right to argue relevant conduct? Didn't they reserve that right? Your Honor, if I may read from the plea agreement as to what they stated. The parties reserved the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider all relevant information concerning the defendant's background, character, and conduct. That's the provision. You knew it was cut. Well, paragraph 8, Your Honor, agree with respect to the calculation of the advisory guidelines range, no other offense characteristic sentencing guidelines factors will be raised. So, I would suggest that those are in direct conflict, because of the way the sentencing were put together in this case. I don't know that this plea agreement has such a problem if it's just one case that you're going to sentence for. But because the sentencings were put together, this agreement is clearly at least ambiguous, if not directly breached with regards to this specific issue, Your Honors. Speaking to issue 1, I was not trial counsel. I do not know. I'm left with the record as I've read it. One time, I was up here in your position, and somebody said that to one of our forebearers, Judge Winter. And he said, son, it is your case now. You own it. Yes, Your Honor. So, saying you're not trial counsel doesn't go anywhere. Yes, Your Honor, and I'm fully prepared to own it. And the comment that I just heard was plea negotiations had fallen apart. So, it is my burden to prove that this case would have been different and that my client's substantial rights were affected. And I would rely on that statement. Plea negotiations had fallen apart. There was every indication at that moment that he was going to trial. Yeah, but against that, at that moment, we are told to take a review of the entire record. You have to look at not just that moment, but the fact that he wants to go to trial, no, yes, no, yes. There are no clear signals. And you have to combine that with the fact that there were multiple opportunities to object to what the district court did here at the time, at the plea hearing, at the sentencing. And I don't fault him for the failure to object because that was not, you know, I understand it's your record, but it's not your fault. And if he had really wanted to go to trial, as opposed to just sort of sending up some smoke or whatever, don't you think at some point along the line, someone would have said, I want to go to trial, Your Honor, or this is an inappropriate comment, or whatever. It wasn't. I would have thought that, Your Honor. However, when you read some of the judge's comments, and I quote, that doesn't mean he walks away scot-free with regard to the second one, but sometimes it's possible, and I can't say this with certainty, that he ends up with a less pleasant sentence if we take this into account. Yeah, and that, you know, that's why, that goes to, I think that goes to the earlier prongs of Olano, as to whether there was an error here. And that's a fair comment. And I think there was an error here. I don't think the judge should have made the comment about, let's get a global resolution, and I don't think the judge should have made comments about less pleasant sentencing being a consequence. You know, that just, that's out of bounds. It's out of bounds. But, you know, at some point, I mean, everybody's under, one of these hearings is, there are multiple obligations. There are certain obligations on judges, there are certain obligations on government, but there are also certain obligations on defendants and his counsel. Yes, Your Honor. I agree with you. But in terms of why he didn't object leading up to sentencing, or why he didn't move to withdraw the guilty plea, it's because there had been an inducement, essentially. No, but I'm not sure that's, because it's a combination of a failure to object plus a failure at any time to say, I want to go to trial. I'm not, even at this point, giving you answers in your opening argument. You know, it isn't entirely clear to me at this point he wants to withdraw the plea and go to trial. I don't really know that. I can affirmatively state that he would like to withdraw the guilty plea and go to trial, Your Honor. Well, that's confirmed on appeal, huh? It's confirmed for purposes of this argument. I need to know, the judges might ask me, do you want to go to trial? We've got to get this nailed down. Yes, Your Honor. On appeal for the first time. And I also think it's important that we address the legality of the sentence issue, and in terms of whether this is an offense after a conviction, as specified by the statute. Because if we do go back and do any of this again, we are going to have to know the answer to that question. Otherwise, we're simply going to be in the same position, Your Honor. Thank you. Unless Your Honors have any further questions? No, but we do thank you, and we'd like to come down and say hello.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd